# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| | § | |
| v. | § | No. 4:19-cr-277 |
| | § | Judge Mazzant |
| LEONOR LOPEZ, | § | |
| | § | |
| *Defendant.* | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Defendant Leonor Lopez's Motion for Compassionate Release and/or a Sentence Reduction (the "Compassionate Release Motion") (Dkt. #2160) and Motion for Show Cause Order or to Grant Relief (the "Show Cause Motion") (Dkt. #2224). Having considered the Motion and the relevant pleadings, the Court finds that the Motions should be **DENIED**.

## BACKGROUND

On June 11, 2020, the Government filed a Second Superseding Indictment against Defendant, among other defendants, following the United States Grand Jury's return of a True Bill (*See* Dkt. #49). Pursuant to the Second Superseding Indictment (Dkt. #49), Defendant was charged with violating the following statutes:

1. 21 U.S.C. § 846;
2. 21 U.S.C. § 848(a);
3. 21 U.S.C. § 959;
4. 8 U.S.C. § 1956(h);
5. 8 U.S.C. § 1956(a)(2)(A);
6. 8 U.S.C. § (a)(2)(B)(i);
7. 18 U.S.C. § 924(c); and

8.  18 U.S.C. § 924(o).

The charges against Defendant did not change with the subsequent filing of a Third and Fourth Superseding Indictment (Dkt. #306; Dkt. #1088). On January 3, 2024, the Government filed a Plea Agreement between Defendant and itself (Dkt. #1620). The terms of that Plea Agreement included Defendant's agreement to enter a plea of guilty to 21 U.S.C. § 846, conspiracy to possess with the intent to manufacture and distribute methamphetamine, along with a violation of 18 U.S.C. §§ 1956(h), 1956(a)(2)(A) and 1956(a)(2)(B)(i), conspiracy to commit money laundering (Dkt. #1620 at pp. 1–2).

On November 12, 2024, the Court entered Judgment in accordance with the Plea Agreement and sentenced Defendant to a total term of 150 months as to Counts 1 and 4 of the Fourth Superseding Indictment, to run concurrently (Dkt. #1855). On July 28, 2025, Defendant filed her Compassionate Release Motion, seeking the elimination of her sentence under 18 U.S.C. § 3582(c)(1)(A) (Dkt. #2160 at pp. 2–3). The Government did not respond. On November 11, 2025, Defendant filed the Show Cause Motion, asking the Court to rule in her favor on her Compassionate Release Motion (Dkt. #2224).

## LEGAL STANDARD

**I.      18 U.S.C. § 3582(c)(1)(A)**

A judgment of conviction imposing a sentence of imprisonment "'constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)). "Often referred to as 'compassionate release,' § 3582(c)(1)(A) embodies a rare exception to a conviction's finality." *United States v. Wilson*, No. 1:07-CR-236-MAC-CLS-1, 2024 WL 4267923, at *3 (E.D. Tex.

Sept. 23, 2024). The statute gives the Court discretion, under certain circumstances, to reduce a defendant's term of imprisonment. *Id.* The First Step Act of 2018, in part, states:

(A) the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

 (i) extraordinary and compelling reasons warrant such a reduction; or

 (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Pub. L. No. 115-391, 132 Stat. 5194, codified as 18 U.S.C. §3582(c)(1)(A).[1]

Instead of defining "extraordinary and compelling reasons," Congress delegated its authority to the United States Sentencing Commission ("Commission") to define the term. *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *see also Wilson*, 2024 WL 4267923, at *3 (collecting cases); *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024). "Although the Commission issued a policy

---

[1] This provision is often referred to as "compassionate release." *See Wilson*, 2024 WL 4267923, at *3 (citing *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023)).

statement prior to the passage of the [First Step Act] that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the Director of the [Bureau of Prisons] . . . ." *Wilson*, 2024 WL 4267923, at *3. Accordingly, the Fifth Circuit held that the policy statement was inapplicable to motions filed by defendants on their own behalf. *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021).

This changed on November 1, 2023, when the amendments to the United States Sentencing Guidelines ("Guidelines") became effective. The Commission amended the Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons potentially warranting compassionate release. *Wilson*, 2024 WL 4267923, at *4 (citing U.S.S.G. § 1B1.13). Section 1B1.13(b), as amended, identifies six categories of circumstances that may qualify as "extraordinary and compelling." U.S.S.G. § 1B1.13(b). The categories are: (1) the medical circumstances of the defendant; (2) the age of the defendant; (3) the family circumstances of the defendant; (4) whether the defendant was a victim of abuse while in custody; (5) other reasons similar in gravity to those previously described; and (6) an unusually long sentence. *Id.* § 1B1.13(b)(1)–(6). Notably, rehabilitation alone is insufficient to grant a defendant's motion for compassionate release. *Jean*, 108 F.4th at 279.

## II.    Exhaustion of Administrative Remedies

Section 3582(c)(1)(A) states that the Court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. *Wilson*, 2024 WL 4267923, at *4 (first citing 18 U.S.C. § 3582(c)(1)(A); then citing *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021); and then *United States v. Franco*, 973

F.3d 465, 467 (5th Cir. 2020)).[2] That is, a defendant may not seek relief from a court before first exhausting each administrative avenue available to the defendant. *See Wilson*, 2024 WL 4267923, at \*4. "Accordingly, before seeking relief from the [C]ourt, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request." *Id.* (first citing 18 U.S.C. § 3582(c)(1)(A); then citing *Garrett*, 15 F.4th at 338).

This exhaustion requirement is a "mandatory claim-processing rule," which means a defendant may not waive it himself. *Franco*, 973 F.3d at 468; *see also United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (per curiam) (unpublished) ("Because the statutory language is mandatory . . . we must enforce this procedural rule . . . ."). However, that is not to say the exhaustion requirement can never be waived. Section 3582(c)'s exhaustion requirement is a claim-processing rule—not a jurisdictional prerequisite. *Ward v. United States*, 11 F.4th 354, 361 (5th Cir. 2021). Thus, like other claim-processing rules, "the Government must properly raise the rule before it will be enforced." *Id.* (citation modified); *see also Fort Bend County. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (citation modified) ("A claim-processing rule may be 'mandatory' in the sense that a court must enforce the rule if a party properly raises it . . . But an objection based on a mandatory claim-processing rule may be forfeited if the party asserting the rule waits too long to raise the point."). In turn, if the Government does not invoke the exhaustion requirement, the Court will deem the matter waived for the purposes of a defendant's motion under § 3582(c)(1)(A). *See Ward*, 11 F.4th at 361; *see also United States v. McLean*, No. 21-40015,

---

[2] The exhaustion requirement applies whether the motion is styled as one for compassionate release or merely for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). *Wilson*, 2024 WL 4267923, at \*4.

2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022) (finding abuse of discretion where the failure to exhaust administrative remedies was raised *sua sponte*).

## III.    U.S.S.G.'s Policy Statement

### A.    Defendant's medical circumstances (U.S.S.G. § 1B1.13(b)(1))

The Sentencing Commission has enumerated four separate medical circumstances to consider in evaluating a compassionate release request. U.S.S.G. §§ 1B1.13(b)(1)(A)–(D).

First, whether the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory)." *Id.* § 1B1.13(b)(1)(A). Although a life-expectancy prognosis is not required, the provided examples make clear how serious the illness must be: "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* Fifth Circuit precedent is in accord. *See, e.g.*, *United States v. McMaryion,* No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) (per curiam) ("We have said that a late-stage, terminal prognosis can constitute an extraordinary and compelling basis for a § 3582(c)(1) motion."). Generic conditions like hypertension or high cholesterol are insufficient. *See, e.g.*, *United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021) (finding neither hypertension nor high cholesterol to be terminal conditions); *United States v. Koons*, 455 F. Supp. 3d 285, 291-92 (W.D. La. 2020) (similar, but for high cholesterol, hypertension, and acid reflux).

Second, whether the defendant is "(i) suffering from a serious physical or medical condition, (ii) suffering from a serious functional or cognitive impairment, or (iii) experiencing deteriorating physical or mental health because of the aging process." U.S.S.G. § 1B1.13(b)(1)(B). This condition must be so severe that it "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* When the defendant's conditions are "managed effectively by

6

medication and do not substantially diminish the ability of the defendant to provide self-care," the defendant's medical condition is not an "extraordinary and compelling reason[] warranting compassionate release . . . ." *United States v. Love*, 853 F. App'x 986, 987 (5th Cir. 2021) (per curiam) (unpublished) (citation modified).

Third, whether the defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). This subcategory focuses on the lack of resources and medical care available in some correctional facilities. Courts have found insufficient general complaints about long-term issues without medical proof of the condition or how it is deteriorating. *See, e.g.*, *United States v. Ani*, No. 21-00147, 2024 WL 50775, at *4 (D. Haw. Jan. 4, 2024) ("BOP is providing him with medical care, such as medication. There is no evidence that his medical conditions are deteriorating; that his medical conditions require long-term or specialized medical care that is not being provided and without which he is at risk of serious deterioration in health or death; or that his ability to care for himself has been seriously diminished."); *United States v. Dessaure-Outlaw*, No. CR 122-023, 2024 WL 83327, at *2 (S.D. Ga. Jan. 8, 2024) (finding general complaints about surgery complication and diabetes insufficient).

Fourth, whether the defendant is in a facility that is "at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority." U.S.S.G. § 1B1.13(b)(1)(D)(i). In addition, the defendant's "personal health risk factors and custodial status" must put them "at increased risk of suffering severe medical complications or death . . . ." *Id.* § 1B1.13(b)(1)(D)(ii). The facility

must also be unable to "adequately mitigate[]" the defendant's increased risk "in a timely manner." *Id.* § 1B1.13(b)(1)(D)(iii).

Courts have repeatedly denied motions related to the COVID-19 pandemic under this section.[3] In fact, the Fifth Circuit has "repeatedly denied relief in cases where prisoners sought compassionate release due to fear of communicable disease, even when those prisoners were in poor health." *McMaryion*, 2023 WL 4118015, at *2 (citing *Thompson*, 984 F.3d at 432–34 (denying relief to a hypertensive stroke survivor concerned by COVID-19)); *see also United States v. Rodriguez*, 27 F.4th 1097, 1098–1101 (5th Cir. 2022) (denying relief where movant fearing COVID-19 suffered from heart failure). Indeed, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also Koons,* 455 F. Supp. 3d at 290 ("[A] prisoner cannot satisfy his burden of proof by simply citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within the BOP . . . .").

Further, the increased risk from an outbreak or emergency must exist at the time relief would be granted. The Sentencing Commission drafted this section using words that convey the necessary, continuous nature of the risk—"at imminent risk of being affected," "ongoing outbreak," "ongoing public health emergency," and "increased risk of suffering." U.S.S.G. § 1B1.13(b)(1)(D). As applied to COVID-19, this is no longer the case: both international and

---

[3] *See, e.g.*, *United States v. Blair*, No. 5:19-CR-50058, 2023 WL 8223470, at *3 (W.D. Ark. Nov. 6, 2023) (finding the mere risk of COVID-19 infection was too speculative to serve as an extraordinary and compelling medical circumstance); *United States v. Williams*, No. GLR-97-355, 2023 WL 8019023, at *4 (D. M.D. Nov. 20, 2023) ("Hypertension and high BMI were not sufficient to warrant a prisoner's relief when the BOP facility's COVID-19 numbers were low, and the inmate did not show that he would not receive appropriate treatment if he were to contract the virus.").

domestic health authorities, including the World Health Organization,[4] the United States Centers for Disease Control and Prevention,[5] and the U.S. Federal Government,[6] have made clear that the COVID-19 pandemic has ended.[7] Thus, the COVID-19 pandemic no longer constitutes an "extraordinary and compelling reason" for compassionate release.

### B.    Defendant's age (U.S.S.G. § 1B1.13(b)(2))

There are three requirements for the defendant's age to constitute an extraordinary and compelling reason for release. First, the defendant must be "at least 65 years old." U.S.S.G. § 1B1.13(b)(2). Second, they must be "experiencing a serious deterioration in physical or mental health because of the aging process." *Id.* Third, the defendant must have "served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id.*

### C.    Defendant's family circumstances (U.S.S.G. § 1B1.13(b)(3))

The Sentencing Commission enumerates four potential reasons for a defendant's family circumstances to constitute an extraordinary and compelling reason for release:

(A)    The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

---

[4]    *Statement on the Fifteenth Meeting of the IHR (2005) Emergency Committee on the COVID-19 Pandemic*, WORLD HEALTH ORG. (May 5, 2023), https://www.who.int/news/item/05-05-2023-statement-on-the-fifteenth-meeting-of-the-international-health-regulations-(2005)-emergency-committee-regarding-the-coronavirus-disease-(covid-19)-pandemic [https://perma.cc/MR64-X7UV].

[5]    End of the Federal COVID-19 Public Health Emergency (PHE) Declaration, Ctrs. for Disease Control & Prevention (May 5, 2023), https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html#:~:text=The%20federal%20COVID-19%20PHE,share%20certain%20data%20will%20change [https://perma.cc/3S43-2VNT].

[6]    *See* National Emergencies Act, PL 118-3, April 10, 2023, 137 Stat 6.

[7]    *See also United States v. Ford*, No. 1:16-CR-19, 2023 WL 3477168, at *5 (N.D. Ind. May 15, 2023) (noting that "on May 11, 2023, the federal government ended the COVID-19 Public Health Emergency based on widespread prevention and control measures like vaccination") (quotations omitted).

(B)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(C)    The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

(D)    The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, "*immediate family member*" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S.S.G. § 1B1.13(b)(3)(A)–(D).

Conclusory assertions that the defendant must now serve as the primary caretaker for a family member are insufficient. *See, e.g.*, *United States v. Newman*, No. CR 122-031, 2024 WL 812041, at *2 (S.D. Ga. Feb. 27, 2024) (finding unsupported assertions that defendant's wife was disabled and that his father required caretaking were "conclusory statements" that were "insufficient to carry his burden of persuasion"). Rather, courts require specific evidence of the defendant's need to serve as a primary caretaker. For example, the defendant must prove with medical support that the family member is incapacitated. *See United States v. Zermeno*, No. 1:16-CR-79(1), 2024 WL 4043445, at *4 (E.D. Tex. Sept. 3, 2024) (collecting cases); *United States v. Romano*, 707 F. Supp. 3d 233, 237–38 (E.D.N.Y. 2023) ("Without medical evidence [of the] father's incapacitation and medical evidence detailing [defendant's] mother's inability to provide his father the necessary assistance, the Court cannot conclude that [the mother] would be an inadequate caregiver."). Statements that a family member is elderly and needs care are insufficient. *Romano*, 707 F. Supp. 3d at 237–38. The defendant must also demonstrate why they are the only available caregiver for that family member. *United States v. Lopez*, No. 23-50404, 2024

10

WL 244935, at *1 (5th Cir. Jan. 23, 2024) (noting that the defendant "failed to explain why his other siblings could not care for his parents"). There must be a reason for the change in that family member's caretaker status. *Id.* (noting the defendant's failure to "allege the death or incapacitation of any current caretaker").

When the caretaking role relates to minors like children, additional requirements apply. For instance, the defendant must show that they would likely gain custody of the child if released. *See, e.g.*, *Zermeno*, 2024 WL 4043445, at *5 (collecting cases). In such a situation, the court should evaluate whether "release of the inmate to care for the inmate's child is the best interest of the child." U.S. Dep't of Just., Fed. Bureau of Prisons, Program Statement 5050.50 (Jan. 17, 2019).

### D.      Victim of abuse (U.S.S.G. § 1B1.13(b)(4))

Under this section, the defendant must establish that, while in custody, they were a victim of (1) "sexual abuse involving a 'sexual act,' as defined in 18 U.S.C. § 2246(2)"; or (2) "physical abuse resulting in 'serious bodily injury,' as defined in the Commentary to §1B1.1." U.S.S.G. §§ 1B1.13(b)(4)(A)–(B). The abuse must have been inflicted by either a correctional officer, employee, or contractor of the BOP, or "any other individual who had custody or control over the defendant." *Id.* § 1B1.13(b)(4). Finally, the alleged misconduct "must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding . . . ." *Id.* But if such proceedings are unduly delayed or the defendant faces imminent danger, a formal adjudication is unnecessary. *Id.*

### E.      Other reasons (U.S.S.G. § 1B1.13(b)(5))

The "other reasons" category is a catchall that allows the defendant to "present[] any other circumstance or combination of circumstances" that is "similar in gravity to" the four extraordinary and compelling reasons described in U.S.S.G. §§ 1B1.13(b)(1)–(4). *Id.*

11

§ 1B1.13(b)(5). Although some courts invoked this provision to grant COVID-19-related compassionate release motions, this reasoning no longer applies because the pandemic is over. *See supra* notes 4–7 and accompanying text.

### F.    Unusually long sentences (U.S.S.G. § 1B1.13(b)(6))

A defendant must meet three requirements under this section. First, the defendant must be serving an unusually long sentence. *See* U.S.S.G. § 1B1.13(b)(6). Second, they must have served at least ten years of that sentence. *Id.* Third, there must have been a change in law that "produce[s] a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." *Id.* This section explicitly excludes non-retroactive changes "to the Guidelines Manual." *Id.* And Fifth Circuit precedent precludes considering non-retroactive changes in *any* law. *United States v. Austin*, No. 24-30039, 2025 WL 78706, at *3 (5th Cir. Jan. 13, 2025) ("A non-retroactive change in the law cannot constitute an extraordinary and compelling reason justifying sentence reduction under § 3582(c)(1)."). Thus, in this circuit, non-retroactive changes are irrelevant.

### IV.    The 18 U.S.C. § 3553(a) Factors

Section 3553(a) directs courts to consider the following factors: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guidelines provisions and policy statements; any pertinent policy statement of the United States Sentencing

Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. *Wilson*, 2024 WL 4267923, at *3 n.7 (citing 18 U.S.C. § 3553(a)).

Importantly, the district court has broad discretion in considering these factors. As the Supreme Court has explained, "the 'sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case . . . .'" *United States v. Rollins*, 53 F.4th 353, 359 (5th Cir. 2022) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). Consistent with the broad discretion granted district courts, the Fifth Circuit has "regularly affirmed the denial of a compassionate-release motion . . . where the district court's weighing of the Section 3553(a) factors can independently support its judgment." *Id.* at 358 (citation omitted). In short, "compassionate release is discretionary, not mandatory, and could be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020).

## V.    The Defendant's Burden

In sum, when seeking compassionate release on their own motion, the defendant must demonstrate that: (1) the defendant exhausted administrative remedies; (2) "extraordinary and compelling reasons" justify the defendant's sentence reduction or the defendant satisfies the requirements of § 3582(c)(1)(A)(ii);[8] (3) the reduction is consistent with the policy statement of U.S.S.G. § 1B1.13; and (4) the court should exercise its discretion to grant the motion after considering the § 3553(a) factors. *Wilson*, 2024 WL 4267923, at *4 (citing *United States v. Jackson*,

---

[8]  18 U.S.C. § 3582(c)(1)(A)(ii) states that "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)."

13

27 F.4th 1088, 1089 (5th Cir. 2022); *Shkambi*, 993 F.3d at 392; *United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022)).

## ANALYSIS

### I.   The Exhaustion Requirement

Before seeking relief from the Court, Defendant is bound by a threshold requirement to exhaust administrative remedies by submitting a request to the warden to move for compassionate release on their behalf, or by waiver following a "lapse of 30 days" after a request to the warden has been made. *Wilson*, 2024 WL 4267923, at *4 (citing 18 U.S.C. § 3582(c)(1)(A)). Attached to Defendant's Compassionate Release Motion is a letter addressed to the warden of her place of incarceration (Dkt. #2160-1). The contents of that letter, paired with the Government's lack of response, is sufficient to meet this requirement. *United States v. Leon*, No. 9:10-CR-29(1), 2025 WL 3496919, at *3 (E.D. Tex. Dec. 4, 2025) ("[I]f the Government fails to 'invoke § 3582(c)(1)(A)'s exhaustion requirement as a basis for denying relief,' that argument is deemed waived." (quoting *United States v. McLean*, No. 21-40015, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022) (per curiam)).

### II.   The "Extraordinary and Compelling Reasons" Requirement

In her Compassionate Release Motion, Defendant (now a 67-year-old female inmate at Federal Medical Center Carswell) identifies a total of three circumstances that she argues constitute extraordinary and compelling reasons for a reduction of her sentence: (a) her health issues in conjunction with the mold and toxins around the prison environment; (b) her extended proximity and interaction with "biological male inmates who allege they are women"; and (c) the fact that her mother and sister are in ailing health (Dkt. #2160 at pp. 2–3). None of these allegations show extraordinary and compelling circumstances. Indeed, two of them have been addressed in a

surprisingly similar circumstance by a court in this district. *See United States v. Hardin*, No. 1:12-CR-80 (1), 2025 WL 2306848, at *5 (E.D. Tex. Aug. 11, 2025).

In *Hardin*, a district court was also tasked with reviewing a 67-year-old female inmate's motion for compassionate release from Federal Medical Center Carswell. *Id.* at *5–6. Like this Court, the court in Hardin was similarly concerned with a motion that requested release based in part on the "dangerous environmental conditions at the prison," and the presence of transgender inmates. *Id.* at *6–7. The *Hardin* court ultimately denied the inmate's request, finding that "a mere risk to one's health does not, alone, constitute an extraordinary and compelling circumstance," and that "perceived 'voyeurism' by other inmates" is insufficient to carry a compassionate release request. *Id.* For the reasons outlined below, the Court sees no reason to stray from the *Hardin* court's decision under the circumstances presented.

Like the defendant in *Hardin*, Defendant first claims that her imprisonment at Federal Medical Center Carswell has exposed her to a variety of negative chemical elements (Dkt. #2160).[9] Naturally, she avers that such exposure has led her to "cycle[] through flu-like symptoms every 6 weeks," and that it has contributed to or otherwise caused her to experience "excessive nasal drainage, headaches, coughing spasms, dizziness, sleep disturbances, and fatigue" (Dkt. #2160). Further, Defendant claims that she has a "genetic disposition to suffer with cancer," and previously suffered "two colon/skin cancer scares" and "high blood pressure" while in custody awaiting sentencing (Dkt. #2160 at p. 2). However, like the defendant in *Hardin*, Defendant

---

[9] The similarity between the two motions cannot be understated. In *Hardin*, a 67-year-old female inmate complained "that FMC Carswell contains 'toxic mold, friable asbestos, and other dangerous chemicals, which are being inhaled by [Hardin] through air ducts.'" *Hardin*, 2025 WL 2306848, at *6. Here, Defendant, a 67-year-old female inmate, complains that FMC Carswell contains "toxic mold, friable asbestos, and other dangerous chemicals, which are being inhaled by the Defendant through the HVAC system" (Dkt. #2160 at p. 2).

"provides no evidence to support a conclusion that [s]he has an advanced illness with an end-of-life trajectory—or that [s]he suffers from a medical or physical condition which substantially diminishes h[er] ability to provide self-care in prison." *United States v. Mascorro*, No. EP-21-CR-833-FM-1, 2023 WL 5352717, at *4 (W.D. Tex. Aug. 21, 2023) (citing U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 cmt. n.1 (A)). Indeed, "although [Defendant] is 67 years old, there is no indication that she is experiencing a serious deterioration in her physical or mental health." *Hardin*, 2025 WL 2306848, at *7. Furthermore, "conditions affecting all inmates at the defendant's prison, regardless of their health, age, and family circumstances, d[o] 'not warrant the extraordinary remedy of compassionate release' for the defendant individually." *United States v. Labra*, No. 4:15-CR-107 (1), 2022 WL 1522250, at *3 (E.D. Tex. May 12, 2022) (quoting *United States v. Mitchell*, No. 15-20609, 2021 WL 1827202, at *2 (E.D. Mich. May 7, 2021)); *see United States v. Lewis*, No. 4:20-CR-00100, 2023 WL 300131, at *4 n.4 (E.D. Tex. Jan. 18, 2023) (holding that the presence of mold and asbestos does not constitute an extraordinary and compelling reason for a defendant's early release). As a result, Defendant has failed to identify any prison or medical condition which would amount to an extraordinary and compelling reason for a sentence reduction. *See Mascorro*, 2023 WL 5352717, at *4.

Defendant next claims that her daily exposure to and association with "biological male inmates who allege they are women" warrants her immediate release (Dkt. #2160 at p. 2). In her Motion, Defendant lists the *exact same reasons* for compassionate release related to this issue as the defendant in *Hardin*, namely that she "is forced to shower with these male inmates and share other intimate facilities" (Dkt #2160 at p. 2). *Hardin*, 2025 WL 2306848, at *7. Because the Court agrees with the district court in *Hardin*, that "perceived 'voyeurism' by other inmates" is insufficient to

carry a compassionate release request, the Court declines to find that Defendant's mere "proximity to biological male inmates who allege they are women" constitutes an extraordinary and compelling reason for a sentence reduction. *Id.*

Finally, Defendant breaks with the compassionate release request at issue in *Hardin* to argue that her mother and sister's ailing health warrants her immediate release. Specifically, she states that her mother is "87 years old, suffering with dementia, diabetes, and heart disease," and that her mother's caretaker is her 65-year-old sister, who is herself "suffering with cancer, severe thyroid disease, cysts on kidneys, and is fully disabled [and] weak due to chemotherapy treatment" (Dkt. #2160). At the outset, the Court recognizes that an extraordinary and compelling reason may arise "[w]hen a defendant is the 'only available caregiver' for an incapacitated parent," which is often "a more unique occurrence given that inmates may have siblings or other family members able to care for their parents." *United States v. Nevers*, No. CR 16-88, 2020 WL 3077034, at *6 (E.D. La. June 10, 2020) (citation modified) (quoting *United States v. Bucci*, 409 F. Supp. 3d 1, 2 (D. Mass. 2019)). Such a circumstance will rarely be found unless the parent is "truly [] incapable of carrying for themselves because 'many, if not all inmates, have aging and sick parents.'" *Id.* (citation modified) (quoting *United States v. Ingram*, No. 2:14-cr-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019)).

Defendant claims that her mother and sister are so ill that "it is necessary for there to be someone in the home to care for them" (Dkt. #2160). Even assuming, *arguendo*, that this statement is true, Defendant has offered no specific facts to support the notion that she is the only available caregiver for either individual. She has not offered any reason, for example, why her mother and/or sister cannot hire living assistance, and does not address whether there are any other family

17

members available to assist them. Given that she is the oldest of 8 siblings, this lack of discussion is fatal to her Compassionate Release Motion (Dkt. #1846 at p. 2). *See id.* at *7 (denying compassionate release where "there is no indication Petitioner is the only potential caregiver for her mother . . . . Rather, the PSR indicates Petitioner has multiple other family members who are potential caregivers"); *United States v. Rodriguez*, 2021 WL 1978830, at *2 (S.D. Tex. May 17, 2021) ("District courts in the Fifth Circuit have repeatedly declined to follow the District of Massachusetts' *Bucci* decision where, as here, the defendant has failed to offer evidence that a family member is in fact incapacitated or that the defendant is the only available caretaker."). Thus, Defendant's request for compassionate release based on family circumstances must be denied.

## III.    The § 3553(a) Factors

Without an extraordinary or compelling reason sufficient to justify a reduction in Defendant's sentence, the Court need not address the § 3553(a) factors. *See Dillon*, 560 U.S. at 826-27. But if the court were to reach that step, those factors provide no basis for relief. Under § 3553(a)(2)(A), the Court must address the seriousness of Defendant's offense, respect for the law, and the availability of a just punishment. *United States v. Bravo-Ziranda*, No. 3:18-CR-00415-K-1, 2023 WL 4494348, at *5 (N.D. Tex. July 10, 2023).

Defendant was a methamphetamine dealer who participated in an active money laundering scheme. She pleaded guilty to multiple charges, and is currently serving a sentence of 150 months—considerably less than the recommended guideline range of 324–405 months (Dkt. #1856 at p. 1). To reduce her sentence any further on the grounds introduced in her Compassionate Release Motion would be to downplay the serious and grave nature of organized drug trafficking.

18

After weighing the factors in 18 U.S.C. § 3553(a), the Court finds that granting Defendant's release would not reflect the seriousness of the offense, promote respect for the law, provide just punishment for his offense, nor adequately deter criminal conduct or protect the public. *Chambliss*, 948 F.3d at 693; *see also Wilson*, 2024 WL 4267923, at *3 n.7 (citing 18 U.S.C. § 3553(a)). Accordingly, Defendant's Motions should be **DENIED**.

## CONCLUSION

It is therefore **ORDERED** that Defendant Leonor Lopez's Motion for Compassionate Release and/or a Sentence Reduction (Dkt. #2160) and Motion for Show Cause Order or to Grant Relief (Dkt. #2224) are hereby **DENIED**.

**IT IS SO ORDERED**.

**SIGNED this 14th day of April, 2026.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

19